IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA FLEMING,<br><br>    Plaintiff,<br><br>  v.<br><br>KEMPER NATIONAL SERVICES, INC., et al.,<br><br>    Defendants.<br>_____/ | No. C-03-5135 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND PREJUDGMENT INTEREST; VACATING HEARING**<br><br>(Docket No. 73) |

    Before the Court is plaintiff Cynthia Fleming's ("Fleming") motion, filed April 25, 2005, for attorneys' fees, costs, and prejudgment interest. Defendants Kemper National Services, Inc.; Vodafone Americas, Inc. Short Term Disability Plan; and Vodafone Americas, Inc. Long Term Disability Plan have filed timely opposition to the motion, to which Fleming has replied. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the June 10, 2005 hearing on the motion. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

    In this ERISA action, the Court granted judgment for Fleming on April 11, 2005. On

April 25, 2005, Fleming timely filed the instant motion for attorneys' fees, costs, and prejudgment interest. Fleming seeks an award of attorneys' fees in the amount of $102,862.50, plus $2363.87 in costs, and prejudgment interest in the amount of $4885.03.

## DISCUSSION

### A. Attorneys' Fees and Costs

In an ERISA action to recover unpaid disability benefits, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." See 29 U.S.C. § 1132(g)(1). The Ninth Circuit has held that "[t]his section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." See Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotations omitted). "As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Id. at 589 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

In determining whether to award fees and costs, the Court should consider the following factors, often referred to as the "Hummell factors":

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

See id. at 590 (quoting Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1982)). "No one of the Hummell factors, however, is necessarily decisive, and some may not be pertinent in a given case." Id. (citation omitted). Because an employee's resources are generally limited, however, and ERISA is intended to afford plan participants effective access to the courts, the ability of the defendant to satisfy an award of fees is a key factor. See id. at 589-90. "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant."

2

See id. at 590.

### 1. The Hummell factors

#### a. The degree of defendants' culpability or bad faith

The Court turns first to the degree of the instant defendants' culpability or bad faith. See Hummell, 634 F.2d at 453. "Although bad faith is a factor that would always justify an award, it is not required." See Smith v. CMTA-IAM Pension Trust, 746 F.2d at 590. Here, there is no indication that defendants acted in bad faith by denying plaintiff's claim. Nonetheless, defendants are culpable to the extent they refused to complete their review of plaintiff's appeal of the denial of plaintiff's claim, even after plaintiff brought the failure to their attention by filing suit, as well as their focusing "overly on Fleming's physical limitations" rather than on "the effects of Fleming's pain and her pain medications on her ability to successfully function as a financial analyst." (See Order Granting Judgment For Plaintiff After Bench Trial, filed April 11, 2005, at 26.) This factor thus supports, albeit only slightly, an award of fees and costs.

#### b. The ability of defendants to satisfy an award of fees

The second Hummell factor is the ability of defendants to satisfy an award of fees. See Hummell, 634 F.2d at 453. Defendants concede, in their opposition, that "there is no current issue concerning the ability to pay fees." (See Opp. at 3.) Consequently, this factor supports an award of fees and costs.

#### c. Whether an award of fees against defendants would deter others from acting in similar circumstances

The third Hummell factor is whether an award of fees against defendants would deter others from acting in similar circumstances. See Hummell, 634 F.2d at 453. The Court finds an award of attorneys' fees against defendants would enhance the likelihood that other ERISA plans that become aware of this lawsuit would take steps to ensure that administrative review is completed in a timely manner, and that the effect of the insured's pain is taken into account in determining whether the insured is entitled to disability benefits. See, e.g., Carpenters Southern California Administration Corp. v. Russell, 726

F.2d 1410 (9th Cir. 1984) ("If defendant employers face the prospect of paying attorney's fees for successful plaintiffs, they will have added incentive to comply with ERISA."); McElwaine v. US West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999) ("A fee award would deter other employers from forcing beneficiaries to undertake costly litigation to preserve their claims.") Indeed, plaintiff's counsel attests that at the American Bar Association's Section of Labor & Employment Law Benefits Committee Midwinter Meeting in February 2005, she received a printed handout, entitled "Go ahead, shoot yourself in the other foot (10 quick ways to lose in 2005)," which cites the instant case as an example of how not to handle an ERISA action. (See Springer-Sullivan Decl. ¶ 24 and Ex. 8.) This factor supports an award of fees and costs.

### d. Whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA

The fourth Hummell factor is whether the party requesting an award of fees sought, by filing suit, to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. See Hummell, 634 F.2d at 453. In the instant case, plaintiff sought only to obtain benefits for herself. Indeed, as defendant correctly points out, plaintiff expressly stated, in the joint pretrial statement filed December 27, 2004, that "[t]he fourth Hummell factor is not applicable to Ms. Fleming's claim because it was a claim for individual benefits." (See Joint Pretrial Statement at 24.) Thus, this factor does not support an award of fees and costs. See Oster v. Barco of California Employees' Retirement Plan, 869 F.2d 1215, 1222 (9th Cir. 1989) (finding fourth Hummell factor weighed against awarding fees where plaintiff sought "benefit for himself, regardless of the impact such a payment might have on the future beneficiaries of the Plan").

### e. The relative merits of the parties' positions

"The fifth Hummell factor, the relative merits of the parties' positions, is, in the final analysis, the result obtained by the plaintiff." Smith, 746 F.2d at 590. In the instant case, the Court found Fleming was entitled to the disability benefits she sought in her complaint.

4

This factor supports an award of fees and costs.

Accordingly, as all but one of the Hummell factors weigh in favor of an award of fees and costs to Fleming, and no special circumstances suggest such an award would be unjust, the Court finds Fleming is entitled to an award of fees and costs.

**2. Amount of Costs**

Fleming has filed a separate bill of costs in the amount of $2077.59, pursuant to 28 U.S.C. § 1920 and Civil L.R. 54-1 et seq., which is pending before the Clerk. (See Docket No. 71.) By the instant motion, Fleming seeks an award of costs under § 1132(g) in the amount of $2363.87, but only "to the extent they are not awarded as taxable costs pursuant to 28 U.S.C. § 1920." (See Motion at 12; Reply at 14.) Defendants have not opposed Fleming's request for costs pursuant to § 1132(g).[1]

Accordingly, Fleming's request for an award of costs under § 1132(g) will be GRANTED in the amount of $286.28, the amount of costs sought in excess of that sought in her bill of costs. The Court expresses no opinion as to whether Fleming is entitled to all of the costs itemized in her bill of costs, as that matter is currently pending before the Clerk.

**3. Amount of Attorney's Fees**

In determining the amount of attorney's fees to be awarded under § 1132(g), the Ninth Circuit has held that the district court first "must determine a 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." See D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990). The district court then may increase or decrease the lodestar fee based on certain factors that are not subsumed within the initial calculation of the lodestar. See id. "Such upward or downward adjustments are the exception rather than the rule since the lodestar amount is presumed to constitute a reasonable fee." Id. In the instant case, Fleming does not seek an adjustment of the lodestar amount.

In determining the lodestar figure, the district court should exclude hours that were

---

[1] Defendants have filed objections to Fleming's separate bill of costs, however.

5

not reasonably expended. See id. at 1384. Once the number of hours is set, the district court must "determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." See id. (citation omitted). The determination of the reasonable fee "is not made by reference to rates actually charged," but by reference to "the prevailing market rate in the community for similar services of lawyers of reasonably comparable skill, experience and reputation." See id. (internal quotation and citation omitted).

**1. Number of Hours**

Fleming seeks attorney's fees for 388.65 hours of attorney time and 10.95 hours of law clerk[2] time expended on the litigation from November 19, 2003 through April 22, 2005, plus an additional 29.15 hours of attorney time and 10.20 hours of law clerk time incurred from April 25, 2005 through May 19, 2005 in preparing the motion for fees, for a total of 417.8 hours of attorney time and 21.15 hours of law clerk time.[3] (See Springer-Sullivan Decl. ¶ 18 and Ex.1; see also Springer-Sullivan Second Decl. ¶ 7 and Ex. 3.) Defendants challenge the reasonableness of the number of hours spent by plaintiffs in litigating the action, as set forth below.

**a. Motion for Summary Judgment on Standard of Review**

First, defendants argue that fees for all but 10 hours of the 79.8 hours Fleming's counsel spent preparing her motion for summary judgment on the standard of review should be disallowed because much of the briefing addressed an issue the Court did not decide. In her motion for summary judgment on the standard of review, Fleming set forth several arguments as to why de novo review should be applied; the Court agreed with one of the arguments, granted Fleming's motion, and did not reach Fleming's additional argument that statements by the California Department of Insurance that discretionary

---

[2] Each of the three law clerks who worked on the case was a law student at the time. (See Springer-Sullivan Decl. ¶ 14.)

[3] Fees incurred in preparing a motion for fees are compensable under ERISA. See D'Emanuele, 904 F.2d at 1387.

clauses in disability insurance contracts violate California law ("CDI issue") also required the Court to apply de novo review. The Court finds Fleming reasonably set forth multiple arguments in support of her motion. The Court's decision not to address all of those arguments in its order does not provide a basis for denying an award of the fees incurred in addressing an argument the Court did not reach. As the Supreme Court observed in Hensley v. Eckerhart, 461 U.S. 424 (1983), "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." See Hensley v. Eckerhart, 461 U.S. at 435; see also Smith v. CMTA-IAM Pension Trust, 746 F.2d at 589 (citing Hensley).

Defendants further argue that Fleming's briefing on the CDI issue essentially duplicated briefing previously submitted by her counsel's law firm in a previous case. The Court agrees that some of the briefing on the CDI issue largely duplicates briefing previously submitted in Rowe v. Planetout Partners Inc. Long Term Disability Plan, C-03-1145 WHA. Fleming's billing records indicate that only 5.85 hours of attorney time was billed specifically for work on the CDI issue, however. (See Springer-Sullivan Decl. Ex. 2 at 4-5.) Moreover, the 33.1 hours spent drafting the motion, although not allocated among the issues addressed therein, does not appear unreasonable. Accordingly, the Court finds the time spent on the summary judgment motion to be reasonable.

### b. Review of Complaint

Defendants next argue that Fleming unreasonably seeks fees for 2.85 hours of law clerk time spent reviewing the complaint on November 19, 2003. Defendants argue that because Fleming's counsel had already spent almost four hours preparing the complaint, it is unreasonable for a law clerk to have spent three more hours reviewing the complaint. Fleming responds, in her opposition, that the law clerk was verifying the accuracy of the allegations, and that it was both efficient and necessary for the law clerk do so. The Court finds the challenged time was reasonably spent.

### c. Preparation of Joint Case Management Statement

Defendants challenge as excessive the 7.85 hours Fleming's counsel spent preparing the joint case management statement. As defendants correctly note, the joint case management statement is five pages in length, and contains no legal argument. (See Penrose Decl. Ex. I.) Fleming points out, however, that defendants themselves billed 4.2 hours reviewing the joint case management statement, and argue that because Fleming took on the burden of drafting the statement, she reasonably spent more time on the statement than did defendant's counsel. Although work on the case management conference statement may reflect "behind the scenes" disputes that do not appear in the final product, neither party has adequately explained how counsel spent a combined total of more than 12 hours preparing the relatively straightforward case management statement. Given the absence of an explanation, the Court finds the 7.85 hours billed by plaintiff on this matter to be excessive, and finds that no more than 5 hours of time reasonably could have been spent preparing the case management statement.

Accordingly, the Court will award fees for only 5 hours of the 7.85 hours Fleming's counsel spent preparing the joint case management statement.

### d. Preparation of Initial Disclosures

Defendants contend that Fleming unreasonably spent 7.55 hours preparing her initial disclosures, and request that the Court award fees for only three hours. Defendants argue that the initial disclosures contain only a list of names that already appeared in the administrative record and a simple damages calculation. Fleming responds that the time was spent in a diligent effort to comply with the requirements of Rule 26(a)(1). In light of the large number of witnesses disclosed in the initial disclosures, (see Springer-Sullivan Second Decl. Ex. 1), the Court finds Fleming's counsel reasonably spent 7.55 hours preparing those disclosures.

### e. Settlement Conference

Defendants argue that Fleming unreasonably spent 49.70 hours preparing for and attending the settlement conference in the instant action, because defendants spent only 21.8 hours on the same tasks. The issue is whether the amount of time spent by Fleming

was reasonable, however, not whether defendants managed to prepare for the same conference in fewer hours. The discrepancy on which defendants rely does not suffice to support a finding that Fleming overprepared for the conference, any more than a conclusion that defendants underprepared. Defendants also argue that because Fleming had already prepared an extensive letter setting forth the grounds for her administrative appeal, (see Penrose Decl. Ex. G), and a letter setting forth a settlement proposal, it is unclear how Fleming could spend so much additional time preparing for the settlement conference. The settlement letter, however, was prepared after, not before, the settlement conference statement. Further, although the work spent on the administrative appeal likely was helpful to Fleming's counsel in preparing for the settlement conference, the Court cannot say it was unreasonable for counsel to spend additional time familiarizing themselves with the nuances of the case in preparation for the give-and-take of the settlement conference.

Defendants further argue that it was unreasonable for Fleming to send two attorneys to the conference. The settlement conference had the potential for being the most significant court date in the case, however, and it was not unreasonable for Fleming to send two counsel to attend it. As plaintiffs point out, given the importance of the conference, it was necessary for a senior attorney to attend, and it also was important that the more junior attorney who actually drafted the settlement conference statement be available at the conference to answer questions about the facts of the case and the supporting evidence. Although the senior attorney could have drafted the statement himself, it would have not been cost-effective, as his billing rate is more than twice as high as that of the more junior attorney who actually drafted the statement.

Accordingly, the Court finds the amount of time spent by Fleming's counsel in preparing for and attending the settlement conference to be reasonable.

/ /

### f.  Pretrial Conference

Defendants similarly object to Fleming's sending two attorneys to the pretrial

9

conference, and request that the Court disallow half of the six hours counsel spent in preparing for and attending the pretrial conference. The pretrial conference is one of the definitive proceedings in the litigation, however, and, consequently, it was not unreasonable for Fleming to have sent two attorneys to the conference to address any issues raised by the Court. The Court finds the six hours spent by counsel in preparing for and attending the pretrial conference to be reasonable.

### g. Fees Motion

Finally, defendants contend Fleming's counsel unreasonably spent 12.9 hours of attorney time preparing the motion for fees and 3.65 hours of law clerk time researching the requirements for the bill of costs.

With respect to the time spent preparing the motion, defendants argue that the fees motion is "nothing more than a 'cut and paste'" from the discussion of fees in the Joint Pretrial Statement. Fleming responds that her fifteen-page motion was not "cut-and-pasted" from the "one-page attorneys' fees section of the Joint Pre-Trial Statement." (See Reply at 10.) Although Fleming's discussion of attorneys' fees in the Joint Pretrial Statement was actually close to four pages in length, (see Penrose Decl. Ex. H at 22-25), the Court agrees with Fleming that much of the fees motion was drafted from scratch. The Court further finds that 12.9 hours was not an unreasonable amount of time to spend in preparing this fifteen-page motion.

With respect to the bill of costs, defendants argue that fees for no more than an hour of time should be allowed for researching the requirements for bills of costs, since the Civil Local Rules expressly set forth what costs are allowable. Defendants also argue that any attorney should already know the rules for bills of costs. The Court agrees that 3.65 hours of law clerk time spent researching the rules for bills of costs is excessive. In the Court's order granting judgment for Fleming, the Court expressly ordered that "Fleming's requests for costs and attorney's fees shall be filed in conformity with Civil Local Rules 54-1 and 54.6, respectively." (See Order Granting Judgment for Plaintiff After Bench Trial, filed April 11, 2005, at 33.) The Civil Local Rules, beginning at Rule 54-1, expressly state the

requirements for bills of costs. (See Civil L.R. 54-1 et seq.) As the Court directed Fleming to the requirements for bills of costs, the Court agrees with defendants that no more than 1.5 hours of law clerk time reasonably should have been spent on the issue.

Accordingly, the Court finds that Fleming reasonably spent 12.9 hours in attorney time preparing her motion for fees, but reasonably spent only 1.5 hours of law clerk time, rather than the 3.65 hours actually billed, researching the requirements for bills of costs.

### h. Conclusion as to Number of Hours Reasonably Spent

As noted, Fleming seeks fees for 417.8 hours of attorney time and 21.15 hours of law clerk time. For the reasons set forth above, the Court finds that 414.95 hours of attorney time and 19 hours of law clerk time were reasonably expended in litigating the instant action and in preparing the motion for fees and bill of costs.

### 2. Hourly Rates

Four attorneys and three law clerks worked on the instant case on Fleming's behalf, with the majority of the work being performed by attorney Cassie Springer-Sullivan ("Springer-Sullivan"). (See Springer-Sullivan Decl. Ex. 1.) Attorneys Daniel Feinberg, Thuy Le ("Le"), and Vincent Cheng ("Cheng") also billed work on the case. (See id.) Fleming seeks an award of fees at the following hourly rates:

| | |
|---|---|
| Springer-Sullivan | $225 |
| Feinberg | $450 |
| Le | $200 |
| Cheng | $200 |
| Law clerks | $125 |

(See Springer-Sullivan Decl. Ex. 1.)

Defendants argue that all attorneys' fees should be awarded at an hourly rate of $200, and that fees for law clerk time should be awarded at an hourly rate of $80. Defendants rely on several opinions issued by a judge in this district, in non-ERISA cases, in which that judge held a reasonable fee is the fee that would be billed by "reasonably competent counsel," and that if "a party chooses to employ counsel of unusual skill and experience, the court awards only the fee necessary to secure reasonably competent counsel." See, e.g., Albion Pacific Property Resources v. Seligman, 329 F. Supp. 2d 1163,

11

1167-68 (N.D. Cal. 2004). The judge further held that "[a] reasonable hourly rate is based on rates charged in the local legal community as a whole, not particular segments of the bar" and that "the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney." See id. at 1169, 1170. After devising a formula derived from information obtained from the United States Census Bureau and Bureau of Labor Statistics, the judge calculated that as of April 2005, reasonably competent counsel in the San Francisco area, regardless of their practice area, would charge $200 per hour, see Baerthlein v. Electronic Data Systems Corp., 2005 WL 818381 at *5 (N.D. Cal. April 7, 2005), and that as of July 2004, a reasonable hourly rate for legal assistant work is $70, see Albion, 329 F. Supp. 2d at 1178.[4]

As none of the cited cases in which the above-referenced methodology was employed is an ERISA case, the cases are distinguishable on that ground alone. Moreover, as noted, the Ninth Circuit has held that, in awarding attorneys' fees in an ERISA case, district courts must consider "the experience, skill, and reputation of the attorney requesting fees" and "should use the prevailing market rate in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." See D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d at 1384 (internal quotation and citation omitted). The cases relied upon by defendants do not take into account the lawyers' skill, experience, and reputation in setting a reasonable fee. See, e.g., Albion, 329 F. Supp. 2d at 1129. Accordingly, the Court finds Albion and its progeny distinguishable and declines to follow their methodology in awarding fees in the instant ERISA action.

Defendants present no other argument for reducing the hourly rates of Fleming's attorneys and law clerks. Fleming has set forth in detail the professional background of each of her attorneys. (See Springer-Sullivan Decl. ¶¶ 3-13.) Springer-Sullivan is a third-year associate who practices almost exclusively in the area of ERISA litigation and a

---

[4] Defendants ask that the Court award fees at an hourly rate of $80 for law clerks, an increase of $10 an hour from the rate found appropriate in Albion.

published author on ERISA issues.  (See id. ¶¶ 5, 7.)  Feinberg is a partner with more than ten years of experience in ERISA issues.  (See id. ¶¶ 8-11.)  Le and Cheng are second- and first-year associates, respectively.  (See id. ¶¶ 12-13.)  Fleming submits the declaration of R. Bradford Huss ("Huss"), a shareholder in the San Francisco law firm of Trucker Huss, a "21-attorney firm [that] practices exclusively in the fields of ERISA, qualified and non-qualified retirement plans, employee benefits and related litigation."  (See Springer Sullivan Decl. Ex. 11 (Huss Decl.) ¶ 2.)  Huss attests that he has been practicing in the area of ERISA litigation since 1977 and that his rate of $425-450 per hour, and his firm's rate of $200 to $225 per hour for a second-year ERISA associate, is "about 20% lower than the rates charged by large San Francisco firms for attorneys with similar qualifications and experience."  (See id. ¶ 6.)  Fleming also submits declarations from Steven M. Tindall ("Tindall"), a partner at Lieff, Cabraser, Heimann & Bernstein LLP who litigates class actions involving ERISA, product defects, and employment issues.  (See Tindall Decl. ¶ 2.)  Tindall graduated from law school in 1996 and attests that his billing rate is $375 per hour, and that his firm's hourly billing rate for second- and third-year associates is $285 per hour.  (See id. ¶ 3.)  Ronald Dean, an attorney whose primary practice has involved ERISA for the past 28 years, attests that his billing rate from January 2003 to January 2005 was $475 per hour.  (See Dean Decl. ¶ 4.)  Dean further attests that he believes the hourly rates sought by Feinberg, Springer-Sullivan, Le, Cheng, and their law clerks "are reasonable and reflect the market value for their time."  (See id. ¶ 12.)  Fleming also points out that a judge in this district recently awarded fees in an ERISA case based on declarations that the market rate for partner-level ERISA attorneys in the Bay Area is $425-$450 per hour, and approximately $225 per hour for ERISA associates.  See May v. Metropolitan Life Ins. Co., 2005 WL 839291 at *3-4 (N.D. Cal. April 7, 2005).  As defendants have submitted no evidence to the contrary, the Court finds the hourly rates sought for Fleming's attorneys and law clerks are reasonable.

### 3. Total Amount of Fees

Fleming seeks an award of attorneys' fees as follows:

| Attorney/Law Clerk | Amount of Hours | Hourly Rate | Total |
|---|---|---|---|
| Feinberg | 39.45 | $450 | 17,752.50 |
| Springer-Sullivan | 281.45 | 225 | 63,326.25 |
| Le | 87.90 | 200 | 17,580.00 |
| Cheng | 10.65 | 200 | 2,130.00 |
| Law Clerks | 21.15 | 125 | 2,643.75 |
|  |  | TOTAL: | $103,432.50 |

(See Springer-Sullivan Decl. Ex. 1; Springer-Sullivan Second Decl. Ex. 3.) As set forth above, the Court has disallowed fees for 2.85 hours of attorney time expended in preparing the case management statement. As that time was spent by attorney Le, the Court will deduct $570 (2.85 x $200/hour) from the total amount of fees sought. Also as set forth above, the Court has found that 2.15 hours of law clerk time were not reasonably spent; accordingly, the Court deducts an additional $268.75 (2.15 x $125/hour) from the total amount of fees sought.

Accordingly, the Court will award a total of $102,593.75 in attorneys' fees.

**B. Prejudgment Interest**

Fleming seeks an award of prejudgment interest in the amount of $4885.03. In the Joint Pretrial Statement, defendants conceded that "prejudgment interest may be awarded at the court's discretion if plaintiff prevails." (See Penrose Decl. Ex. H at 22.)

The Ninth Circuit has held that a district court may award prejudgment interest in ERISA cases to compensate a plaintiff for the loss he incurred as a result of the defendant's nonpayment of benefits. See Dishman v. Unum Life Ins. Co. of America, 269 F.3d 974, 988 (9th Cir. 2001). Whether to award prejudgment interest "is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." See Shaw v. International Association of Machinists, 750 F.2d 1458 (9th Cir. 1985). Appropriate considerations include whether the "financial strain" of paying prejudgment interest would injure other plan beneficiaries, and whether the defendants acted in bad faith. See id.; see also Dishman, 269 F.3d at 988. "Although a defendant's bad faith conduct may influence whether a court awards prejudgment interest, it should not influence the rate of the interest." See id. "[T]he interest rate proscribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of prejudgment interest

unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1164 (9th Cir. 2001). The Court applies the interest rate that was in effect at the time payment was due to the plaintiff, not the rate applicable as of the date of judgment. See Nelson v. EG&G Energy Measurements Group, 37 F.3d 1384, 1391-92 (9th Cir. 1994).

Fleming argues that the Court should award prejudgment interest because defendants acted in bad faith by denying her claim and would suffer no financial hardship if they were ordered to pay interest. Defendants have not opposed Fleming's request for prejudgment interest.

As noted, the Court has not found that defendants acted in bad faith. Nonetheless, the Court agrees that Fleming is entitled to an award of prejudgment interest. There is no evidence that defendants would suffer any financial hardship by paying prejudgment interest to Fleming, nor that any other beneficiary of the plans would suffer as a result. Had defendants properly reviewed Fleming's claim and focused on the effects of her pain and her pain medication on her ability to function in her position as a financial analyst, Fleming would have received long ago the benefits to which she is entitled. Fleming is entitled to an award of prejudgment interest to make her whole.

Fleming requests an award of prejudgment interest at the rate that was in effect, pursuant to 28 U.S.C. § 1961, at the time of each monthly payment defendants did not make. (See Springer-Sullivan Decl. ¶¶ 25-26 and Exs. 9-10.) The rates requested are appropriate, as is Fleming's request that the interest be calculated as each payment became due. See Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d at 1164 (holding district court is to award prejudgment interest at rates set forth in 28 U.S.C. § 1961 "unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate"); Nelson v. EG&G Energy Measurements Group, 37 F.3d at 1391-92 (holding courts should apply interest rate in effect at time payment was due). Fleming has set forth a detailed chart setting forth her interest calculations, which counsel attests was calculated using the computer program, "Interest Machine." (See Springer-Sullivan Decl.

¶ 26 and Ex. 10.) The Court notes that Fleming's calculations are based on an assumption that she would receive benefit payments in specified amounts each month, and that no evidence to support her entitlement to the specified amount of those payments has been submitted to the Court. Defendants, however, have not taken issue with the calculations set forth in Fleming's briefing. Accordingly, the Court will assume that Fleming is entitled to disability benefits in the amounts set forth in Fleming's calculations. (See Springer-Sullivan Decl. Ex. 10.)

Accordingly, the Court will GRANT Fleming's request for prejudgment interest in the amount of $4885.03.

## CONCLUSION

For the reasons set forth above, it is HEREBY ORDERED that Fleming's motion for attorney's fees, costs, and prejudgment interest is hereby GRANTED in part and DENIED in part, as follows:

1. Fleming's request for attorneys' fees is GRANTED in part, in the amount of $102,593.75.

2. Fleming's request for an award of costs under § 1132(g) is GRANTED in the amount of $286.28, the amount of costs sought in excess of that sought in her bill of costs. The Court expresses no opinion as to whether Fleming is entitled to all of the costs itemized in her bill of costs, as that matter is currently pending before the Clerk.

3. Fleming's request for prejudgment interest is GRANTED, in the amount of $4885.03.

This order terminates Docket No. 73.

**IT IS SO ORDERED.**

Dated: June 9, 2005

/s/ Maxine M. Chesney
MAXINE M. CHESNEY
United States District Judge